PASSAIC CONSOLIDATED WATER COMPANY, APPELLANT, v. JOHN McCUTCHEON, CLERK, AND PASSAIC VALLEY WATER COMMISSION, RESPONDENTS.

Argued October 18, 1928—Decided February 4, 1929.

For the appellant, *Lindabury, Depue & Faulks, John Milton* and *Josiah Stryker.*

For the respondents, *William B. Gourley, William I. Lewis, Arthur S. Corbin* and *George L. Record.*

The opinion of the court was delivered by

KATZENBACH, J. In the year 1923 the legislature passed an act known as chapter 195 of the laws of 1923 (*Pamph. L.* 1923, *p.* 504) entitled, "An act to authorize two or more municipalities in this state by means of a commission to acquire, either by purchase or condemnation, and operate privately owned water works now or hereafter supplying water therein, and in other municipalities, if any, in which water is supplied by the same water works, together with the franchises, rights, and any or all other appurtenant property of the owner or owners, of such works, and to enlarge and extend the same." Under this act the cities of Paterson, Passaic and Clifton, by appropriate actions of their governing bodies, applied to a justice of the Supreme Court for the appointment of a commission to acquire the water works of the Passaic Consolidated Water Company (hereinafter called the Water Company), a corporation supplying water to the inhabitants of the municipalities mentioned and various other municipalities within the State of New Jersey. The commission was appointed and is known as the Passaic Valley Water Commission (hereinafter referred to as the Commission). The Commission was unable to agree with the Water Company upon a price to be paid for the acquisition of the water works, rights, franchises, and property of the Water Company. Application was then made by the Commission to a justice of the Supreme Court for the appointment of commissioners to fix by condemnation the compensation to be paid for the water works, rights, franchises and property of the Water Company. The

petition was filed on April 24th, 1928. On the same day an order was made by the justice fixing May 12th, 1928, as the date of hearing said petition.

The hearing resulted in the making of an order appointing three freeholders of the county of Passaic as commissioners. In said order the time for the commissioners to report was fixed as May 1st, 1929. After the making of the order the same justice allowed a writ of *certiorari* to review the same. Argument in the *certiorari* proceedings was had before the Supreme Court at the May term, 1928. The Supreme Court rendered an opinion sustaining the order and dismissing the writ of *certiorari*. The judgment of the Supreme Court has been appealed by the Water Company to this court.

Chapter 195 of the laws of 1923 provides in the third section thereof that the condemnation proceedings shall be conducted in pursuance of and in the manner prescribed by an act entitled, "An act to regulate the ascertainment and payment of property condemned or taken for public use (Revision of 1900), approved March twentieth, one thousand nine hundred, and the amendments and supplements thereto," known as the Eminent Domain act.

The contention of the Water Company is that the Eminent Domain act when applied to the property of the Water Company proposed to be taken does not provide for just compensation. The sixth section of the Eminent Domain act provides that the commissioners shall make a just and equitable appraisement of the property to be taken and an assessment of the amount to be paid by the petitioner for such land or other property and damage aforesaid, as of the date of the filing of the petition and order therein. Under this provision the commissioners in making their award are prohibited from considering anything in the nature of extensions and betterments added to the property after the filing of the petition. In the ordinary case of condemnation no injustice by this provision of the statute is done to the owner as he is under no obligation to extend, improve or add to his property. In the present case the situation is different. The Water Company is a public utility. It is subject to regulation by the board of public utility commissioners. It must render

adequate service. It cannot lawfully refuse to make repairs, improvements, additions and extensions which are required for such service. It serves a population of four hundred and twenty-five thousand. This number is increasing. To adequately serve its present patrons and new customers will require the expenditure of a considerable sum between the date of filing the petition and the completion of the condemnation. The condemnation proceedings will take a very considerable period of time. This is evidenced by the fact that the court gave until May 1st, 1929, for the filing of the commissioner's report. The property is varied. It consists of pumping and filtration stations, reservoirs, mains, pipes, meters, fire hydrants, &c. It is located in four counties. During the two years preceding the commencement of these proceedings $710,000 had been expended for main extensions and other property. For such similar expenditures during the condemnation proceedings the statute affords no method of compensation.

The Commission proposes to acquire the property free of liens. The reason for this is that the condemnation price can be obtained by an issue of bonds of the municipalities which will bear a lower rate of interest than the bonds now outstanding. Cities, for reasons unnecessary to state, are in a better position to obtain loans at less interest than a public utility. This the Water Company also contends will result in taking its property without just compensation. The bonds outstanding secured by mortgage upon its property and franchises are $7,926,000. Some are callable at prices ranging from one hundred and five to one hundred and ten. Others are not callable. Some bear interest at six per cent., others at five per cent. Some of the bonds do not mature for many years. The claim is that the award cannot be invested to return the same rate of interest as that upon the present issues, so that any equity in the award may be largely consumed by the bondholders before the bonds mature, to the detriment of the stockholders. This argument rests upon the assumption that the bonds are not matured by the condemnation proceedings and their provisions as to date of payment

remain in force, notwithstanding the action of the state by its agency, the Commission, representing the municipalities.

It is also contended by the Water Company that it will sustain a loss in its accounts receivable, which amounts to the taking of its property without just compensation. While it owns the property accounts can be readily collected by the power to cut off a customer's supply of water if the bill is not paid. When the Water Company is no longer the owner this method of enforcing payment is no longer available. A considerable loss in the accounts will for this reason be sustained.

Taking up these questions in their reverse order, it seems to us that the position of the Water Company is untenable in the question of losses in the accounts receivable. There will probably be losses in the collection of the accounts after the Water Company is no longer able to control the supply. It is not, however, as we view it, a legal loss but a practical loss. This probable loss could and should be saved to the Water Company by appropriate legislation to insure the payment of the accounts.

With reference to the mortgages the law is, as between private parties, that a mortgagee cannot be compelled to accept the amount due on the mortgage until the due day. *Tillou* v. *Britton,* 9 *N. J. L.* 120; 41 *C. J.* 798, § 924. But without so deciding, as it is unnecessary to do so, we are inclined to the view that when the state, or an agency of the state, acts in a condemnation proceeding, in which the inclusion of encumbrances as parties is provided for by legislative enactment, and a gross sum is awarded and paid into the Court of Chancery for distribution, it does not have to be kept there until the encumbrances mature, but that an award can be made by that court to the encumbrancers of the present value on the market basis of the securities viewed as an investment at stated rates for a stated period which the security-holder will be obliged to accept. If this be the correct view this difficulty disappears.

This brings us to the consideration of the first contention of the appellant, which is that it is entitled to the benefit of the constitutional provision that private property shall not be

taken for public use without just compensation, and that under the General Eminent Domain act of 1900, by which in the present class of cases the condemnation of the property of the Water Company must be had, does not afford just compensation. It is, of course, conceded by the Commission that the provision of the constitution must be complied with and the Water Company afforded just compensation for its property. The question then turns upon the sufficiency of the Eminent Domain act for this purpose. The power to condemn is dormant until the legislature supplies the plan. *Butler* v. *Sewer Commissioners, 39 N. J. L.* 665. The plan must be so adequate and comprehensive as to do complete justice to the owner. *Sherwin* v. *Wigglesworth, 129 Mass.* 64. In this case Chief Justice Gray said: "It would be most unjust to charge the owners of the land with betterments or other taxes imposed after it has been designated and set apart for the public use, and while they cannot enjoy, nor improve it, nor obtain compensation for any increase in its value." The General Eminent Domain act provides that the assessment of the amount to be paid by the petitioner for such land or other property and damage aforesaid shall be fixed as of the date of the filing of the petition and order thereon. As has been stated this date was April 24th, 1928. The time fixed for the filing of the report of the commissioners was May 1st, 1929. This could be extended. It is also improbable that the report would be acceptable both to the Commission and the Water Company. This would mean an appeal from the award, a jury trial, and probably an appeal of the judgment to the higher courts. It is not unlikely that two years or more would pass before the final termination of the controversy. In the meantime the Water Company is under the duty and subject to the orders of the public utility commission to make such extensions, improvements. and betterments as may be required to render adequate service to the communities it serves. To refuse to do so because of the pending proceedings would be no defense to the orders. Failure to provide a method by which the owner can be reimbursed for the extension and betterments it is obliged to make during the pendency of the proceedings is a serious matter and deprives the Water

Company of just compensation for its property if the statute cannot be so construed as to include such payments.

The answer of the Commission to this argument is stated in the Supreme Court opinion in the following language:

"But to meet this situation, the Passaic Valley Water Commission, at the argument and in its brief made this proposition, the Commission is willing and has the power under the act [*Pamph. L.* 1923, *p.* 504], to contract, that in the event, that the Commission takes over the property covered by the petition at the end of the condemnation proceedings, the Commission will pay in addition to the condemnation award, the actual cost of the property contributed by the company, after the date of the appointment of the condemnation commissioners, or to condemn the same. This the Passaic Valley Water Commission has the power to do under the act [*Pamph. L.* 1923, *p.* 504, § 3], 'may enter into a contract to purchase such water works for compensation to be agreed upon or fixed by condemnation proceedings, as hereinafter provided.' "

This is tantamount to saying that notwithstanding that the act fails to provide a method for just compensation the proceeding may be sustained if the Commission offers to purchase or condemn the property which it cannot take in the initial condemnation proceedings. The fallacy of this reasoning is that a condemnation proceeding cannot be had under an invalid act. The owner is not required to submit its property to such jeopardy. Whether or not to proceed to acquire the additional property cannot be optional with the condemning party. It must be a remedy to which the party can resort of its own motion or compel the movement of the municipality by *mandamus. Butler* v. *Sewer Commissioners, supra.* It is also a doubtful question whether the language of section 1 of the 1923 act is broad enough to give the Commission the power which it is claimed it does. An owner should not be obliged to have his property subjected to condemnation under statutes which are of doubtful meaning. Corrective legislation can be obtained which will insure the proper execution of the constitutional mandate respecting the acquisition of private property.

The Supreme Court also sought to sustain its decision by the following statement contained in its opinion:

"If, in the application of the statute, it may seemingly work an injustice, we cannot refuse to apply or enforce a constitutional statute for that reason; because, as was said by Chief Justice Beasley, in the case of *Douglass* v. *Board of Chosen Freeholders*, 38 *N. J. L.* 216, where that which is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, all reasoning derived from the supposed inconvenience, or even absurdity of the result, is out of place."

It will be observed that the language of Chief Justice Beasley is directed to a constitutional statute. It hence has no application to the situation under discussion where the attack is made upon the ground that the statute is unconstitutional.

The final argument of the Supreme Court is contained in these words:

"We see no practical or legal difficulty in applying the statute, so as to produce a result of just compensation in the award, for the property taken and the damages done by such taking. This loss is a damage to the company's property not taken, caused directly by the taking of the rest of the company's property. This loss is clearly recoverable as damages, in the condemnation proceedings, in the award. This process does not involve the taking of private property without compensation. The property actually taken and the damages to the remaining property is adequately covered by the award of the commissioners."

This argument we deem unsound because the statute itself fixes both value and damages as of the date of filing the petition, April 24th, 1928.

This concludes the consideration of the questions and arguments presented by the respective parties. We have reached the conclusion that the legislation is insufficient to accomplish the object for which it was intended in that it does not provide a complete method for ascertaining and paying just compensation to the Water Company. The legislature can enact in a

short time appropriate legislation. Such legislation will simplify and clarify the situation. Its enactment, we think, will result in a saving of time.

The judgment of the Supreme Court is reversed with the direction to enter in said court, upon receipt of the *remittitur*, a judgment setting aside the order of May 12th, 1928, appointing said condemnation commissioners.

*For affirmance*—None.