**FAIRBANKS NORTH STAR BOROUGH and Fairbanks North Star Borough School District, Appellants,**

**v.**

**STATE of Alaska, William Sheffield Governor of the State of Alaska, Marshall Lind, Commissioner of Education, Eleanor Andrews, Commissioner of Administration, Emil Notti, Commissioner of Community and Regional Affairs, Loren Lounsbury, Commissioner of Commerce and Economic Development, Milton Barker, Acting Commissioner of Revenue, all in their official capacities, Appellees.**

No. S–2254.

Supreme Court of Alaska.

May 6, 1988.

---

Eugene P. Hardy and Mark Andrews, Asst. Borough Attys., Gordon W. Duval, Staff Atty., Fairbanks, Paul H. Cragan, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellants.

James Baldwin and Robert M. Maynard, Asst. Attys. Gen., Grace Berg Schaible, Atty. Gen., Juneau, for appellees.

Before MATTHEWS, C.J., and BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This case is before us for the second time on appeal. In *State v. Fairbanks North Star Borough*, 736 P.2d 1140, 1140–41 (Alaska 1987) (*Fairbanks I*), we affirmed the superior court's decision holding unconstitutional the governor's impoundment of certain legislative appropriations under the authority of AS 37.07.080(g). We concluded that that statute permitted the governor so much discretion as to amount to an unconstitutional delegation of legislative power to the executive branch. *Id.* at 1142–44. As a result of our decision, the governor's Administrative Orders,[1] which had withheld expenditure authority on funds earmarked for, among others, plaintiffs Fairbanks North Star Borough and Fairbanks North Star Borough School District (collectively "Borough"), were vacated, clearing the way for payment of the appropriated funds. *Id.* at 1144.

Before any payment was made, however, the legislature enacted ch. 9, SLA 1987 (H.B. 132),[2] which explicitly ratified and approved all of the restrictions imposed by the governor. The trial court, on remand,[3]

---

1. Former Governor Sheffield issued Administrative Order No. 90 in August, 1986. 736 P.2d at 1141. A very similar order, Administrative Order No. 91, was issued by Governor-elect Cowper in December, 1986. *Id.* at n. 1. For purposes of convenience, we refer to these executive actions herein simply as those of "the governor."

2. We decided *Fairbanks I* on May 6, 1987. However, we granted a ten-day stay of judgment on the basis of the state's assertion that such time was needed to allow the legislature to respond to the situation. H.B. 132 was enacted May 15, 1987.

3. In *Fairbanks I*, we affirmed the superior court on the merits, but we remanded with instructions that the court modify its earlier judgment to allow for total retroactivity. 736 P.2d at 1140–41. After enactment of H.B. 132, the state moved this court for rehearing in *Fairbanks I*.

concluded that H.B. 132 was a valid curative act, and modified its earlier judgment to affirm the withholdings. Now, with the governor and the legislature in complete agreement on the cuts, appellant local governments approach this court seeking compelled payment of the originally appropriated funds. We affirm the modified decision of the trial court.

A curative statute is

a statute passed to cure defects in prior law, or to validate legal proceedings, instruments, or acts of public and private administrative authorities which, in the absence of such an act would be void for want of conformity with existing legal requirements, but which would have been valid if the statute had so provided at the time of enacting.

2 C. Sands, Sutherland Statutory Construction § 41.11 (4th ed. 1973); *see generally School District No. 26 Bouse Elementary of Yuma County v. Strohm,* 106 Ariz. 7, 469 P.2d 826, 828 (1970); *McCormack v. Houston,* 84 Cal.App.2d 665, 191 P.2d 569, 576–77, *cert. denied,* 335 U.S. 868, 69 S.Ct. 138, 93 L.Ed. 412 (1948). In this case, the state legislature passed H.B. 132 with the express intention of validating the governor's impoundment orders, which had been rendered void by the *Fairbanks I* decision. *See* ch. 9, § 1(b), SLA 1987. Thus, if the statute qualifies as a valid curative act, it should be given its intended retroactive effect, thereby legitimizing the governor's heretofore improper exercise of executive power.

Courts have uniformly upheld the validity of curative legislation where (1) the legislature originally had the power to authorize the acts done, and (2) there is no unconstitutional impairment of vested rights as a result of the act's passage. *See State ex rel. Tomasic v. Kansas City,* 230 Kan. 404, 636 P.2d 760, 775 (1981); *accord Strohm,* 469 P.2d at 828; *Hoffman v. City of Red Bluff,* 63 Cal.2d 584, 47 Cal.Rptr. 553, 558, 407 P.2d 857, 862 (1965); *Labor Inv. Corp. v. Russell,* 405 P.2d 1008, 1012

We denied the motion, but we expressly noted that our denial was "without prejudice to appellants' right to move for a modified judgment in the superior court" on remand.

(Okla.1965); 2 C. Sands, Sutherland Statutory Construction § 41.11–.12 (4th ed. 1973), *see also Zurfluh v. State,* 620 P.2d 690, 692–93 (Alaska 1980) (applying retroactively a curative statute relating to criminal sentencing). H.B. 132 easily satisfies both requirements.

■ First, it can hardly be argued that the legislature is without power to enact a statute authorizing the governor to withhold payment on specific appropriations. *See, e.g., State ex rel. Holmes v. State Board of Finance,* 69 N.M. 430, 367 P.2d 925, 929 (1961); *State ex rel. Boyle v. Ernst,* 195 Wash. 214, 78 P.2d 526, 528 (1938); *see also Fairbanks I,* 736 P.2d at 1144 ("[t]his court does not hold that the legislature could not draft a statute which would permit the executive to exercise limited authority to control expenditures as [the governor has] done"). H.B. 132 does not grant the governor "sweeping power over the entire budget with no guidance or limitation," as did AS 37.07.080(g)(2). *Fairbanks I,* 736 P.2d at 1142–43. Rather, it is narrowly tailored to authorize only those impoundments specified in Administrative Orders 90 and 91. *See* ch. 9, § 2, SLA 1987. The Borough's argument that H.B. 132 "is unconstitutional for the same reasons AS 37.07.080(g)(2) was unconstitutional" is therefore unconvincing.

■ Second, H.B. 132 does not unconstitutionally impair any vested rights. The Borough's claimed violations of due process and equal protection fail for a number of reasons, not the least of which is our recent holding in *Kenai Peninsula Borough v. State, Department of Community and Regional Affairs,* 751 P.2d 14, 18–19 (Alaska 1988), wherein we concluded that political subdivisions of the state are prohibited from asserting due process and equal protection claims against their creator. In sum, we see no bar to enforcement of H.B. 132 as a valid curative act.[4]

4. We reject as meritless the Borough's numerous other claims of error.

Our decision in *Fairbanks I* comports with our analysis here. In *Fairbanks I*, we affirmed the trial court's finding that the governor acted unconstitutionally in withholding the Borough's funds because he purported to act under the authority of a statute so broadly worded as to amount to an abrogation of the legislature's responsibility over appropriations. 736 P.2d at 1142–43. The legislature has since recognized its responsibility, and has taken it upon itself to consider and approve each of the heretofore unconstitutional impoundments. To now hold, as the Borough suggests, that our earlier decision gave the Borough some inviolate right to receipt of the funds, would be to effectively place the purse strings in the hands of the judiciary, a branch no more qualified to possess them than was the executive.

We conclude that H.B. 132 is a valid and constitutional exercise of the legislative power, which effectively cured any constitutional infirmities in the governor's earlier actions. Accordingly, the judgment of the superior court is AFFIRMED.

RABINOWITZ, J., not participating.